# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| OCWEN FINANCIAL CORPORATION and PHH MORTGAGE CORPORATION § § § *Plaintiffs,* § § v. § § SAMUEL L. BOYD, BOYD & § ASSOCIATES, and JEAN-MARC § EICHNER § § *Defendants.* § | Civil Action No. 4:23-cv-408 Judge Mazzant |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Ocwen Financial Corporation and PHH Mortgage Corporation's Motion to Remand (Dkt. #7). Having considered the motion and the relevant pleadings, the Court finds that Ocwen Financial Corporation and PHH Mortgage Corporation's Motion to Remand (Dkt. #7) should be **GRANTED**.

### BACKGROUND

**I.   Factual History**

From 2016 to 2019, Jean-Marc Eichner served as the Vice President of Customer Experience at Ocwen Financial Corporation ("Ocwen") (Dkt. #14, Exhibit 1 ¶¶ 4–5). When Eichner was laid off in May 2019, he signed a separation agreement that contained a release of claims provision in exchange for $125,000 (Dkt. #14, Exhibit 1 ¶ 35).

In 2019, Eichner, represented by Samuel L. Boyd and the law firm Boyd & Associates, brought suit against Ocwen Financial Corporation ("Ocwen") for various causes of action under

the False Claims Act. Relators' Compl. Pursuant to 31 U.S.C. §§ 3729–3732 (Federal Civil False Claims Act) ¶¶ 221–28, *United States ex rel. Eichner v. Ocwen Fin. Corp.*, No. 4:19-cv-524 (E.D. Tex. July 15, 2019). This litigation is still ongoing. *United States ex rel. Eichner*, No. 4:19-cv-524.

Ocwen had previously been involved in other False Claims Act litigation in the Eastern District of Texas. Another former employee, Fisher, had brought two lawsuits against Ocwen under the False Claims Act. *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tex); *United States ex rel. Fisher v. Homeward Residential, Inc.*, No. 4:12-CV-461 (E.D. Tex). The Court will refer to these actions collectively as the "*Fisher* Actions." Boyd and Boyd & Associates served as counsel for the relators in the *Fisher* Actions. *Id.* The *Fisher* Actions ended in a settlement agreement where Ocwen paid $30 million (Dkt. #14, Exhibit 2 at pp. 3–4). The settlement agreement stated in relevant part: "[t]he exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Texas" (Dkt. #14, Exhibit 2 at p. 12).

## II.   Procedural History

Ocwen and PHH Mortgage Corporation brought suit against Eichner, Boyd, and Boyd & Associates in Texas state court for breach of contract, fraudulent inducement, and tortious interference (Dkt. #1 at pp. 27–33). According to Plaintiffs:

> This lawsuit arises out of concerted action by Boyd and Eichner to cause substantial harm to Ocwen in breach of obligations they owed to Ocwen. Boyd induced Ocwen to pay $30 million to settle False Claims Act, 31 U.S.C. §3729, et seq. (the "FCA"), litigation that he initiated and prosecuted against Ocwen by falsely representing that Ocwen was buying an end to Litigation (the "Fisher Settlement"). But, before the ink was even dry on the Fisher Settlement, Boyd was scheming to sue Ocwen again, for the exact same conduct, in breach of the release and covenant not to sue he agreed to in return for receiving a significant portion of the settlement proceeds.

(Dkt. #1 at p. 16). Defendants removed the case because Defendants claim that the Court has original subject matter jurisdiction over at least a portion of Plaintiffs' claims via federal question jurisdiction (Dkt. #1 at pp. 1–5). Alternatively, Defendants claim that the Court has supplemental jurisdiction over Plaintiffs' claims (Dkt. #1 at pp. 4–5).

Plaintiffs filed the present motion before the Court to remand the case to Texas state court for lack of subject matter jurisdiction (Dkt. #7). Subsequently, Defendants filed a response (Dkt. #14). Then, Plaintiffs filed a reply (Dkt. #15). Finally, Defendants filed a sur-reply (Dkt. #16).

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)). "In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction." *Humphrey v. Tex. Gas Serv.*, No. 1:14-CV-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014) (citations omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction," *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), and "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "When considering a motion to remand, the removing party bears the burden of

3

showing that federal jurisdiction exists and that removal was proper." *Humphrey*, 2014 WL 12687831, at *2 (quoting *Manguno*, 276 F.3d at 723).

A federal court has federal question jurisdiction over an action only if "a federal question appears on the face of the plaintiff's well-pleaded complaint." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). The complaint must establish that "federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006); *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009). Federal question jurisdiction does not arise from the "mere presence of a federal issue in a state cause of action." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see also Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

## ANALYSIS

Defendants, as removing parties, bear the burden of showing that subject matter jurisdiction exists and removal was proper. *Humphrey*, 2014 WL 12687831, at *2 (quoting *Manguno*, 276 F.3d at 723). To meet this burden, Defendants present four main arguments.[1] First, Defendants claim that the Court has federal question jurisdiction over the claims in this case under *Grable & Sons Metals Products., Inc. v. Darue Engineering & Manufacturing* (Dkt. #14 at pp. 5–9). 545 U.S. 308 (2005). Second, Defendants assert that the settlement agreement from the *Fisher* Actions provides the Court with exclusive jurisdiction over Plaintiffs' claims against Boyd (Dkt. #14 at p. 14). Third, Defendants claim that the Court has subject matter jurisdiction over

---

[1] Defendants' arguments never address the Court's alleged subject matter jurisdiction over Plaintiffs' claims against Boyd & Associates (*See* Dkt. #14; Dkt. #16). However, the same reasons the Court does not have subject matter jurisdiction over Plaintiffs' claims against Boyd apply equally to those against Boyd & Associates.

4

Plaintiffs' claims against Boyd pursuant to its inherent authority to enforce the *Fisher* Actions settlement agreement (Dkt. #14 at p. 15). Finally, Defendants claim that the Court may exercise supplemental jurisdiction over all of Plaintiffs' claims (Dkt. #14 at pp. 9–14).

**I.      Federal Question Jurisdiction Under *Grable & Sons Metal Products, Inc.***

Defendants argue that federal question jurisdiction exists in this case under *Grable & Sons Metal Products, Inc.* and its progeny (Dkt. #14 at pp. 5–9). 545 U.S. 308. Specifically, Defendants claim the federal question at issue is whether a provision in a contract (whether a settlement agreement or an employment severance agreement) that bars an individual's *qui tam* claims is invalid due for violating public policy (Dkt. #14 at pp. 5–6). Plaintiffs' causes of action consist of breach of contract, fraudulent inducement, tortious interference (Dkt. #6 ¶¶ 40–70).

Plaintiffs argue that no federal question jurisdiction exists in this case because "Ocwen's state law claims do not turn upon the resolution of a federal issue" (Dkt. #15 at p. 9). Plaintiffs claim "Defendants are seeking to raise a federal issue as a defensive matter" in the form of whether federal public policy bars Ocwen's state law claims (Dkt. #15 at p. 9). Further, Plaintiffs direct the Court to *Box. v. PetroTel, Inc.* to support its argument (Dkt. #15 at pp. 8–9). 33 F.4th 195 (5th Cir. 2022).

"The *Grable* doctrine provides that, even when a state court petition pleads only state law causes of action, federal jurisdiction nonetheless exists 'if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* at 201 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). "'*Grable* confers federal jurisdiction in a 'slim category' of cases." *Id.* (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)).

5

### A. Breach of Contract and Tortious Interference

Plaintiffs' breach of contract and tortious interference claims do not satisfy the first element of the *Grable* doctrine. Although a federal issue may arise in the resolution of these claims, the federal issue is not necessarily raised in the resolution of Plaintiffs' breach of contract and tortious interference claims.

A federal issue is not necessarily raised in a claim where no element requires proving that federal issue. *Box*, 33 F.4th at 202. In *Box*, the plaintiff's causes of action were only state law causes of action. *Box*, 33 F.4th at 201. The defendant argued that the state court petition "necessarily raised a federal issue because [the plaintiff's] breach of contract and fraudulent inducement claims depend on the existence of a valid contract, but the alleged contract at issue is void under federal securities law." *Id.* The Fifth Circuit held that the defendant's argument violated the well-pleaded complaint rule. *Id.* at 201–02. In order for federal question jurisdiction to occur under *Grable & Sons Metal Products, Inc.*, the well-pleaded complaint rule must still apply. *Id.* (citing *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 942 (5th Cir. 2013)). "Therefore, a [party] invoking Grable as the basis for federal [question] jurisdiction must still show that the alleged federal issue arises on the face of the state court petition." *Id.* at 202. No element of the plaintiff's causes of action required proving a federal issue. *Id.* The defendant's alleged federal question of contractual illegality was an affirmative defense under Texas law. *Id.* at 201. Therefore, no federal question jurisdiction was present in *Box*. *Id.* at 202.

The elements to prove the existence of a valid contract do not require proving Defendants' alleged federal issue. Both breach of contract and tortious interference causes of action require that the plaintiff prove the existence of a valid contract. *Prudential Ins. Co of Am. v. Fin. Review Servs.,*

6

*Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (citing *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)). In Texas, to show the existence of a valid contract, the plaintiff must show: "(1) an offer was made; (2) the other party accepted . . . ; (3) the parties had a meeting of the minds . . . ; (4) each party consented . . . ; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *USAA Tex. Lloyds Co.*, 545 S.W.3d at 502 n.21 (citing *E–Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet. h.)). Even in the context of contracts relating to *qui tam* litigation, none of these elements require proving that a provision in a contract that bars an individual's *qui tam* claims is invalid for violating public policy. *See id.*

No element of Plaintiffs' breach of contract claims requires proving Defendants' alleged federal issue. To prevail on a breach of contract claim, a party must prove "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *Id.* In this case, none of these elements require proving that a provision in a contract that bars an individual's *qui tam* claims is invalid due to public policy. *See id.*

However, the allegation that a contract is unenforceable because it contravenes public policy is an affirmative defense to a breach of contract claim under Texas law. *Godoy v. Wells Fargo Bank, N.A.*, 542 S.W.3d 50, 54 (Tex. App.—Houston [14th Dist.] 2017), *aff'd* 575 S.W.3d 531 (2019). Defendants' argument violates the well-pleaded complaint rule. A federal claim does not appear on the face Plaintiffs' state court petition. *See Box*, 33 F.4th at 202. Rather, Defendants'

affirmative defense "belongs in a responsive pleading, which cannot itself support federal jurisdiction." *See id.* Even if Defendants' defense is "inevitable," it would still not provide a basis for federal question jurisdiction. *Benhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

No element of Plaintiffs' tortious interference claim requires proving Defendants' alleged federal issue. The elements of tortious interference (with an existing contract) require "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co of Am.*, 29 S.W.3d at 77. None of these elements require proving that a provision in a contract barring an individual's *qui tam* claims is invalid due to public policy. *See id.*

The defense that a contract is void for violating public policy in the context of a tortious interference claim does not belong on the face of the plaintiff's well-pleaded complaint and cannot support federal question jurisdiction. A defendant may defeat a claim of tortious interference by proving that the underlying contract is void for violating public policy. *NCH Corp. v. Share Corp.*, 757 F.2d 1540, 1543 (5th Cir. 1985). The question of whether a contractual provision that bars an individual's *qui tam* claims is invalid due to public policy is a determination of whether the contractual provision is void for violating public policy. *See United States ex rel. Longhi v. United States*, 575 F.3d 458, 474 (5th Cir. 2009); *Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 922 (Tex. App.—Dallas 2013, no pet.) ("Contracts that are against public policy are void and of no legal effect."). In the context of tortious interference, the defendant bears the burden of proving that a contract is void for violating public policy because this issue lies outside the elements that the plaintiff must prove. *See USAA Tex. Lloyds Co.*, 545 S.W.3d at 502 n.21. Therefore, the issue of whether a contract is void for violating public policy in a claim for tortious interference does not

belong on the face of the plaintiff's well-pleaded complaint, but rather should appear in a responsive pleading. *See Box*, 33 F.4th at 202.

Therefore, neither Plaintiffs' breach of contract nor tortious interference claims satisfy the first element of the *Grable* doctrine and cannot support federal jurisdiction.

### B. Fraudulent Inducement

Plaintiffs' fraudulent inducement claims cannot support federal question jurisdiction under the *Grable* doctrine because Defendants' alleged federal issue is insubstantial, even if it is necessarily raised and disputed. For the purposes of this analysis, the Court will assume that the alleged federal issue is both necessarily raised and disputed as to Plaintiffs' fraudulent inducement claims. For the substantiality element of the *Grable* doctrine, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Gunn*, 568 U.S. at 259. "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id.*

The essence of Defendants' argument is that the alleged federal issue is substantial because the state court may incorrectly apply federal law, threatening the development of a uniform body of *qui tam* law (Dkt. #14 at pp. 8–9). Defendants argue that "the federal issues raised by this case are 'substantial' because Ocwen is asking the state court to ignore the FCA and contravene federal common law, under causes of action premised on an argument that the federal *qui tam* litigation is barred by the severance agreement" (Dkt. #14 at p. 8). "Permitting the state court to make such rulings risks conflicting rulings that implicate federal law" (Dkt. #14 at pp. 8–9).

9

In response, Plaintiffs argue that the alleged federal issues are not substantial because "Ocwen's claims against Eichner are fact and situation-specific questions regarding Eichner's decision to make false representations to Ocwen to secure his severance payment" (Dkt. #15 at pp. 8–9). "Such fact and situation-specific questions do not raise federal claims" (Dkt. #15 at p. 9) (citing *Parish of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 374 (5th Cir. 2021)). The Court does not address Plaintiffs' argument because Defendants' argument does not show that the alleged federal issue is substantial.

Texas state court application of federal law regarding the False Claims Act does not pose a serious threat to the federal interest in maintaining a uniform body of *qui tam* law. If the state court were to exercise jurisdiction here, federal courts still "would retain full authority and responsibility for the interpretation and application of [*qui tam*] law, for they would not be bound by state court interpretations" of the False Claims Act. *See Tafflin v. Levitt*, 493 U.S. 455, 465 (1990). The state court decision would not have precedential effect in the federal system. *See id.*

In resolving the alleged federal issue, the Texas state court "would be guided by federal court interpretations of" the False Claims Act. *See id.* at 456. Federal law provides clear guidance in this case. Federal public policy and the plain language of the False Claims Act bar the enforcement of releases in *qui tam* cases. *United States ex rel. Longhi*, 575 F.3d at 474. "[S]tate courts are generally presumed competent to interpret and apply federal law." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (citing *Zwickler v. Koota*, 389 U.S. 241, 245 (1967)).

Even if Defendants' alleged federal issue is necessarily raised and disputed, it is not substantial. The Court finds that no federal claim appears on the face Plaintiffs' state court petition. Therefore, no federal question jurisdiction exists regarding Plaintiffs' claims.

## II. Exclusive Jurisdiction Under the *Fisher* Actions Settlement Agreement and Inherent Authority

Defendants claim that the *Fisher* Actions settlement agreement provides the Court with "exclusive jurisdiction" to hear Plaintiffs' claims against Boyd (Dkt. #14 at p. 14; Dkt. #16 at pp. 5–6). This argument relies on the statement in the settlement agreement that "[t]he exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Texas" (Dkt. #14, Exhibit 2 at p. 12). Further, Defendants claim that federal courts have the inherent authority under federal common law to enforce the settlement of its cases, providing another basis for federal question jurisdiction (Dkt. #14 at p. 15).

In contrast, Plaintiffs argue that the Court did not retain jurisdiction to interpret or enforce the *Fisher* Actions settlement agreement unless the Court's prior order expressly retains that jurisdiction. (Dkt. #7 at p. 8). Plaintiffs further attached one of the Court's prior order from the *Fisher* Actions to demonstrate that the Court did not retain jurisdiction to enforce or interpret the *Fisher* Actions settlement agreement (Dkt. #7 at p. 9).[2]

To start, no provision in the False Claims Act purports to give a district court jurisdiction over disputes related to a False Claims Act settlement. While the False Claims Act does give a district court the power to oversee and approve a False Claims Act settlement, it does not provide the Court with ongoing jurisdiction to resolve any dispute related to a False Claims Act settlement that may arise in the future. As to settlements, the False Claims Act provides:

> The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the

---

[2] The Court will take judicial notice of the orders of dismissal in both *Fisher* Actions. *Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tex May 19, 2017) (ECF No. 593); *Homeward Residential, Inc.*, No. 4:12-CV-461 (E.D. Tex May 19, 2017) (ECF No. 385). Plaintiffs only provided the order of dismissal for *Loan Servicing, LLC* (*See* Dkt. #7, Exhibit 1). However, both orders of dismissal are substantively identical for the purposes of this case.

11

>circumstances . . . If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim . . . If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred . . . .

31 U.S.C. § 3730(c)(2)(B), (d)(1), (d)(2). As is clear, these provisions do not grant a federal district court with jurisdiction over False Claims Act settlement disputes after a case has been dismissed.

Moreover, the Court can find no authority interpreting the False Claims Act as inherently retaining jurisdiction in a district court with regard to the settlements of False Claims Act claims within that court. On the contrary, well-established Fifth Circuit caselaw provides that jurisdiction does not extend past the filing of a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41, except in limited circumstances. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("Neither the Rule [41] nor any provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation [of dismissal]."); *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010) ("According to the text of Rule 41(a)(1)(A)(ii) and our precedent, a district court's jurisdiction over a case that is settled and voluntarily dismissed by stipulation cannot extend past the filing date absent an express contingency or extension of jurisdiction . . . ."). Importantly, the Fifth Circuit drew no distinction between causes of action in the cases promulgating this jurisdictional principle; therefore, despite Defendants' contentions, the fact the settlement is related to the False Claims Act is irrelevant. *See generally Kokkonen*, 511 U.S. 375; *SmallBizPros, Inc.*, 618 F.3d. 461.

12

Limited circumstances exist where a court retains jurisdiction when parties file a joint stipulation of dismissal pursuant to Rule 41: (1) the parties' stipulation of dismissal expressly retains jurisdiction in the district court, or (2) the stipulation of dismissal is contingent on a future act by the court and the court then expressly retains jurisdiction. *SmallBizPros, Inc.*, 618 F.3d at 463–64. This is so because "[u]nder Rule 41(a)(1)(A)(ii), it is clear that the parties to a case may enter into a settlement agreement, sign and file a stipulation of dismissal with the district court, and the dismissal will be effective upon filing notwithstanding any other action by the district court." *Id.* at 462. Meaning, the operative document for a dismissal in this circumstance is the joint stipulation and "any action by the district court after the filing of such a stipulation can have no force or effect because the matter has already been dismissed by the parties themselves without any court action." *Id.* "Therefore, to ensure that jurisdiction is retained so a district court has the power to enforce the terms of a settlement agreement, either (i) all of the requirements for retaining jurisdiction must be met at the time of filing, or (ii) the filing's effectiveness must be contingent upon a future act . . . ." *Id.*

Whether retained pursuant to a joint stipulation of dismissal or a court's order of dismissal, jurisdiction is only retained if (1) the joint stipulation or order contain an express provision retaining jurisdiction, or (2) the joint stipulation or order incorporates or embodies the terms of the settlement agreement directly into the order. *Id.* at 462–63; *see also Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002); *Kokkonen*, 511 U.S. at 381.

The Court will take judicial notice of the parties' joint stipulations of dismissal in the *Fisher* Actions. *Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tex Apr. 28, 2017) (ECF No. 583); *Homeward Residential, Inc.*, No. 4:12-CV-461 (E.D. Tex Apr. 28, 2017) (ECF No. 379). The *Fisher*

Actions were dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The parties to the *Fisher* Actions filed joint stipulations of dismissal. Those joint dismissals provide, in whole, that:

> Relators Michael J. Fisher and Brian Bullock and Defendants Ocwen Loan Servicing, LLC, Ocwen Financial Corporation, and Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc. (collectively, "Ocwen"), by and through their counsel, hereby submit this Joint Stipulation of Dismissal with Prejudice under Federal Rule of Civil Procedure 41(a), and stipulate and agree to the following:
>
> WHEREAS, on February 17, 2017, Relators and Defendants entered into a final Settlement Agreement in *United States ex rel. Michael J. Fisher v. Ocwen Loan Servicing, LLC, et al.*, Civil No. 4:12-cv-543 (the "OLS Case") and *United States ex rel. Michael J. Fisher v. Homeward Residential, Inc., et al.*, Civil No. 4:12-cv-461 (the "Homeward Case"), which was conditioned upon the consent and approval of the United States Department of Justice ("DOJ");
>
> WHEREAS, on April 5, 2017, counsel for the United States advised the parties and the Court that the government has authorization to consent to the final dismissal of the OLS Case and the Homeward Case in accordance with the terms of the Settlement Agreement upon receipt of payment by Defendants; and
>
> WHEREAS, under the terms of the February 17, 2017 Settlement Agreement, conditioned upon Ocwen's full payment of the Settlement Amount and the Statutory Fees (as defined therein), (i) Relators agreed to release Ocwen with prejudice from any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct (as defined therein) under the False Claims Act, 31 U.S.C. §§ 3729-3733, and (ii) the United States agreed to release Ocwen with prejudice from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, and common law theories of breach of contract, payment by mistake, unjust enrichment, or fraud, subject to the exceptions enumerated in Paragraph 6 of the Settlement Agreement,
>
> Relators and Defendants hereby stipulate and agree that, pursuant to Federal Rule of Civil Procedure 41(a), all claims in the OLS Case and the Homeward Case shall be dismissed with prejudice as to Relators. The Court, however, will maintain jurisdiction solely for the limited purpose of resolving (i) any disputes regarding the Relators' share of the settlement payment by Ocwen to the United States, or (ii) any issues regarding the allocation among Relators' counsel of statutory attorneys' fees, expenses, and costs. Relators also note that, as of this filing, they have not yet been informed of the United States' position regarding the Relators' share.

*Id.* at *1–3. These joint stipulations do not retain jurisdiction over disputes arising from the settlement agreement. First, the joint stipulations do not contain a provision expressly retaining jurisdiction outside of disputes regarding the Relators' share of the settlement payment and allocation of attorney's fees. *Id.* at *2–3. Second, the joint stipulations do not incorporate or embody the settlement agreement, aside from the definitions of "Statutory Fees" and "Covered Conduct." *See id.* The joint stipulations refer to the settlement agreement at multiple points, in particular the definitions of "Statutory Fees" and "Covered Conduct." *See id.*

However, mere references to a settlement agreement or boilerplate incorporation language (such as language indicating that parties stipulate to dismiss a case "subject to the terms" of a settlement agreement) are insufficient to incorporate a settlement agreement. *Tele-Cons v. Gen. Elec. Co.*, No. 6:10-CV-451, 2011 WL 13134894, at *1–2 (E.D. Tex. Nov. 2, 2011). The references to the settlement agreement in the joint stipulations do not rise to the level of boilerplate incorporation language because the references do not indicate that the dismissal of the *Fisher* Actions through the joint stipulations was subject or pursuant to the terms of the settlement agreement. *See id.* These references to the settlement agreement within the joint stipulations were insufficient to incorporate the settlement agreement into the joint stipulations, aside from the definitions of "Statutory Fees" and "Covered Conduct." *Hosp. House, Inc.*, 298 F.3d at 433. Thus, the Court's jurisdiction was not retained by the joint stipulation for the purposes of this case.

Even if the parties had made the joint stipulations' effectiveness contingent upon a future act by the Court, the Court's dismissal orders in the *Fisher* Actions also do not retain jurisdiction over the cases. The Court's orders dismissing the *Fisher* Actions state as follows:

> IT IS ORDERED that this case be dismissed with prejudice as to Relators Michael J. Fisher and Brian Bullock (together, "Relators") pursuant to the February 17,

> 2017 Settlement Agreement (the "Agreement") entered into between Relators and Defendants . . . .
> IT IS FURTHER ORDERED that this case be dismissed with prejudice as to the United States of America with respect to any claims asserted in this action under the False Claims Act, 31 U.S.C. §§ 3729-3733, or the common law theories of breach of contract, payment by mistake, unjust enrichment, or fraud for the Covered Conduct, as that term is defined in the Agreement.
> IT IS FURTHER ORDERED that all other claims be dismissed without prejudice to the United States, including that the United States has specifically reserved and not released the following claims . . . .
> The United States and relators will resolve the outstanding issue of relators' share pursuant to 31 U.S.C. § 3730(d) promptly, either through a negotiated resolution or through proceedings before this Court if the parties are unable to agree. The Court shall also retain jurisdiction as to any issues regarding the allocation among Relators' counsel of statutory attorneys' fees, expenses, and costs.
> IT IS SO ORDERED.

*Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tex May 19, 2017) (ECF No. 593); *Homeward Residential, Inc.*, No. 4:12-CV-461 (E.D. Tex May 19, 2017) (ECF No. 385). The Court's orders do not contain a provision retaining jurisdiction over disputes arising from the settlement agreement and do not incorporate or embody the settlement agreement, aside from the definitions of "Statutory Fees" and "Covered Conduct."

For the reasons discussed above, the Court finds that the settlement agreement from the *Fisher* Actions does not provide the Court with jurisdiction to hear Plaintiffs' claims against Boyd. Further, the Court has no inherent authority under federal common law to enforce the settlement of its cases.

### III. Supplemental Jurisdiction

Defendants claim Plaintiffs' claims against Eichner are compulsory counterclaims subject to the Court's supplemental jurisdiction without requiring any independent basis for subject matter jurisdiction (Dkt. #14 at pp. 9–12). Further, Defendants argue that the Court may exercise supplemental jurisdiction over Plaintiffs' claims against Eichner and Boyd because these claims

16

derive from a common nucleus of operative fact with claims in a separate action in federal court (Dkt. 14 at pp. 12–14).

Plaintiffs argue supplemental jurisdiction is not an appropriate, independent basis for removal because "'[s]upplemental jurisdiction on its own does not give federal courts the power to remove a state case'" (Dkt. #7 at p. 6 (quoting *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 294 (5th Cir. 2010)). Plaintiffs further direct the Court to *City of Canton v. New Beginning Fellowship Church* to support the proposition that compulsory counterclaims do not create supplemental where it does not otherwise exist. No. 6:19-cv-365, 2019 WL 13251927 (E.D. Tex. Nov. 13, 2019).

That one state law claim, which a defendant removed from state to federal district court, derives from a common nucleus of operative fact with another claim in the same federal district court, but within an entirely distinct action, does not provide a sufficient basis for the exercise of supplemental jurisdiction. 28 U.S.C. § 1367(a); *Halmekangas*, 603 F.3d at 293; *City of Canton*, 2019 WL 13251927, at *3. For supplemental jurisdiction to be present "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). A court may only exercise supplemental jurisdiction over a state law claim where it occurs in the same lawsuit as the related claim(s) (over which the court has original subject matter jurisdiction). *Halmekangas*, 603 F.3d at 293; *City of Canton*, 2019 WL 13251927, at *3; *Terrell v. Ace European Grp. Ltd.*, No. 1:09-cv-506, 2011 WL 13195833, at *16 (E.D. Tex. June 24, 2011). As the related *qui tam* claims exist within an entirely distinct lawsuit, it may not serve as a basis for the Court to exercise supplemental

jurisdiction over Plaintiffs' claims in this case. *See id.*; *United States ex rel. Eichner v. Ocwen Fin. Corp.*, No. 4:19-cv-524 (E.D. Tex.).

The presence of claims that should allegedly be compulsory counterclaims in a different action in the same district court does not provide an independent basis for the Court to exercise supplemental jurisdiction.[3] *See* 28 U.S.C. § 1367(a). Regardless of whether a claim is a compulsory counterclaim, the requirements of supplemental jurisdiction remain the same. *See id.* Importantly, supplemental jurisdiction requires a district court to exercise original subject matter jurisdiction over at least one other claim in the same action. *See id.* § 1367(a). Defendants claim that "all compulsory counterclaims fall within the federal courts' jurisdiction" (Dkt. #14 at p. 10 (citing *CheckPoint Fluidic Sys. Int'l, Ltd.* v. *Guccione*, Civil Action No. 10–4505, 2012 WL 195533, at *4 (E.D. La. Jan. 23, 2012). However, the case Defendants cite states "[w]hen a counterclaim is compulsory it is within the supplemental jurisdiction of the court because by definition it must arise out of the same transaction or occurrence as the original claim." *CheckPoint Fluidic Sys. Int'l, Ltd.*, 2012 WL 195533, at *4. That statement relies on the assumption that the district court already exercises original subject matter jurisdiction over at least one other claim in the same action. *See id.*; *See* 28 U.S.C. § 1367(a). Instead, that statement is not applicable to this case because the Court does not have original subject matter jurisdiction over any claim in this case. *See* 28 U.S.C. § 1367(a).

Even if the Court would have supplemental jurisdiction over the claims in this case, supplemental jurisdiction alone could not serve as a basis for removal. *Halmekangas*, 603 F.3d at

---

[3] The Court does not address whether Plaintiffs' claims against Eichner in this case would be compulsory counterclaims in the related *qui tam* litigation because that analysis is irrelevant to whether the Court may exercise subject matter jurisdiction over the claims in this case.

18

294–95; *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A defendant may only remove a civil action to federal court where the federal district court would have original subject matter jurisdiction over the action. *Id.* at 295; 28 U.S.C. § 1441(a). However, supplemental jurisdiction is not a form of original subject matter jurisdiction. 28 U.S.C. § 1367(a); *Halmekangas*, 603 F.3d at 295; *City of Canton*, 2019 WL 13251927, at *3. Therefore, supplemental jurisdiction is not an independent basis for removal. *Halmekangas*, 603 F.3d at 295; *City of Canton*, 2019 WL 13251927, at *3.

For the reasons discussed above, the Court cannot exercise supplemental jurisdiction over any of the claims in this case. The Court cannot exercise subject matter jurisdiction over any claim in this case. Therefore, remand of this action to state court is appropriate.

## CONCLUSION

It is therefore **ORDERED** that Ocwen Financial Corporation and PHH Mortgage Corporation's Motion to Remand (Dkt. #7) is hereby **GRANTED.**

It is therefore **ORDERED** that the case is remanded to the 416th District Court of Collin County Texas.

**IT IS SO ORDERED.**

SIGNED this 20th day of November, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE